# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES W. DELLA CAMERA, | : | |
| Administrator of the Estate of | : | |
| JAMES A. DELLA CAMERA, | : | |
| Plaintiff, | : | |
| | : | No. 3:02 CV 578 (CFD) |
| v. | : | |
| | : | |
| ARTHUR BARTLEY, DANIEL | : | |
| TRAVISANO, FRANK MYJAK, and | : | |
| NICHOLAS LANGELLO, | : | |
| Defendants. | : | |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff James W. Della Camera ("Della Camera") brought this action as the administrator of the Estate of James A. Della Camera, his father. He alleges violations of the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988.[1] Specifically, Della Camera alleges that defendants Arthur Bartley, Daniel Travisano, and Frank Myjak, as officers of the Town of Branford Police Department ("Branford officers"), and defendant Nicholas Langello, as an officer of the Town of East Haven Police Department, failed to investigate adequately the motor vehicle accident which caused the death of his father.[2] All officers are sued in their individual capacities.

Della Camera charges that the officers' failure to gather evidence amounts to a denial of his constitutional right of access to the courts, as the lack of such evidence prevented the estate of

---

[1] The complaint originally was filed in the Superior Court of Connecticut, Judicial District of New Haven, but properly was removed to this Court pursuant to 28 U.S.C. §§ 1441, 1443, and 1446.

[2] In Della Camera's original complaint filed in state court, he named an additional defendant, Branford police officer Dorance Johnson. Della Camera since has dropped any claims against Officer Johnson in this action.

his father from receiving full legal redress for James A. Della Camera's injuries and subsequent death.  Defendants Bartley, Travisano, and Myjak jointly have filed a motion for summary judgment.  Defendant Langello has filed a separate motion for summary judgment.

## I.    Facts[3]

On February 16, 1999, at approximately 9:00 a.m., Joseph Laurello was driving a Chevrolet station wagon northbound on Dominican Road in Branford, Connecticut.  He stopped at the intersection of Dominican and Route 1 (also known as West Main Street), intending to make a left turn onto Route 1 westbound.  Route 1 is a divided roadway with a median, and runs east-west.  At the same time, the plaintiffs's decedent James A. Della Camera was driving his Dodge pickup truck eastbound on Route 1, to Laurello's left, and approaching the Dominican Road intersection.  Cheryl Conrad, driving a BMW sedan, proceeded down Route 1 westbound to the intersection.  Conrad and Laurello's vehicles hit.[4]  Conrad then spun out of control, crossed into the eastbound lane, and struck Della Camera's vehicle.

East Haven police officer Langello was the first officer to arrive at the accident scene.  After reaching the intersection, Langello realized that the location was outside his jurisdiction, and he contacted the Branford Police Department.[5]  Arthur Bartley was the first Branford officer

---

[3] The following facts are taken from the parties' Local Rule 9(c) (now Local Rule 56) statements and are undisputed unless otherwise indicated.

[4] Laurello disputed at his deposition whether his and Conrad's vehicles made contact with one another.

[5] The accident scene was near the border of the towns of East Haven and Branford.  Langello remained on the scene and assisted the Branford police in securing the intersection, directing traffic, and taking one witness statement.  After turning over that witness statement to the Branford Police Department, Langello had no further involvement in the accident investigation.

to respond, and became the investigating police officer for the accident. Subsequently, Branford Sergeant Frank Myjak and Officer Daniel Travisano also reported to the accident scene.

By the time the Branford officers arrived, emergency medical technicians and ambulance personnel were treating Conrad and James A. Della Camera, who had been ejected from their vehicles. The three Branford officers inspected Conrad's vehicle; none found any evidence of drug or alcohol use in that car. Bartley also knelt down within a few feet of Conrad, and did not detect any odor of alcohol.[6] Bartley and Myjak then interviewed Laurello, who was not injured, about the circumstances of the accident. All three officers also inspected Laurello's vehicle. Based on their observations during the interview and car search, neither Bartley nor Myjak saw any indication of alcohol or drug use by Laurello.[7]

All the defendants contend that, based upon their police training and observations at the scene, they lacked probable cause to conduct blood alcohol testing on any of the drivers involved in the accident. Della Camera argues that the circumstances of the accident were such that any reasonable police officer would have considered it necessary to perform such tests and to investigate more fully Conrad's and Laurello's activities before the accident. He also argues that the officers should have interviewed Laurello's mother, who was a passenger in Laurello's car at the time of accident. Della Camera further alleges that the defendants' failure to gather this data left him without evidence of Conrad's and Laurello's deliberate and reckless misconduct, and thus prevented James A. Della Camera's estate from pursuing a cause of action against Conrad

---

[6] Branford officers Myjak and Travisano arrived after Conrad had been transported from the scene.

[7] Both Conrad and Laurello were charged with motor vehicle offenses: Conrad with failure to wear a seat belt and lack of insurance and Laurello with failure to grant right of way.

and Laurello on those grounds.[8]

## II.    Standard of Review

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323.

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992).  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

---

[8] Della Camera did, however, file a lawsuit against Conrad and Laurello in the Connecticut Superior Court, charging them both with negligence and charging Conrad with operating a motor vehicle recklessly.  See Della Camera v. Conrad, Docket No. CV-99-0432072-S (complaint dated Oct. 25, 1999).  He later withdrew that complaint.  The plaintiff stated in his summary judgment papers here that Conrad was uninsured at the time of the accident and subsequently declared personal bankruptcy, limiting the Estate's ability to seek redress from her.

### III.    Discussion

Although the defendant Branford Officers and defendant Langello have filed separate motions for summary judgment, both motions argue that the defendants are entitled to judgment in their favor because the officers' actions are protected under the doctrine of qualified immunity.

42 U.S.C. § 1983 provides a civil claim for damages whenever a person acting under color of law subjects an individual "to the deprivation of any rights, privileges, or immunities secured by the Constitution" or other federal laws. State officials, however, may invoke the affirmative defense of qualified immunity. That doctrine shields "police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is meant to ensure that "fear of personal monetary liability and harassing litigation will [not] unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The Supreme Court has construed the doctrine as providing "ample protection to all but the plainly incompetent or those who knowingly violate the law." Groh v. Ramirez, 124 S. Ct. 1284, 1298 (Feb. 24, 2004) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In the instant case, the Court first must determine whether the undisputed facts concerning the defendants' conduct, as well as evidence presented by the plaintiff viewed in the light most favorable to that party, violated Della Camera's constitutional right of access to the courts, and if so, whether that right was "clearly established" under the specific circumstances of this case. See Saucier v. Katz, 533 U.S. 194, 201 (2001). A clearly established right is one

5

whose "contours" are "sufficiently clear that a reasonable official would understand that what he [did] violate[d] that right." Anderson, 483 U.S. at 640 (1987).

Della Camera claims that the defendants, through their failure to conduct blood alcohol and drug tests on Conrad and Laurello or otherwise conduct a more extensive investigation, violated his right of access to the courts under the Fifth and Fourteenth Amendments.[9] The Supreme Court first acknowledged a fundamental right of access to the courts in Ex parte Hull, 312 U.S. 546 (1942), when it ruled that a state may not impair a prisoner's right to petition the federal courts for a writ of habeas corpus. See id. at 549. The right of access, located in the Fifth and Fourteenth Amendments' guarantees of due process of law, requires that all persons enjoy "adequate, effective, and meaningful" access to the legal system. Bounds v. Smith, 430 U.S. 817, 822 (1977); see also Lewis v. Casey, 518 U.S. 343, 380-83 (1996).[10]

The fundamental right of access to the courts also provides certain rights to litigants more generally. All persons have a right of access to the courts "to present to the judiciary allegations concerning violations of fundamental constitutional rights." Wolfe v. McDonnell, 418 U.S. 539, 579 (1974). Therefore, in criminal cases, an indigent defendant must be provided with a

---

[9] The Fourteenth Amendment also requires that states make court facilities physically accessible to all persons. See Tennessee v. Lane, 124 S. Ct. 1978 (May 17, 2004). Della Camera, however, complains that he was deprived of substantive access to the courts, and it is the scope of that right which is explored here.

[10] On occasion, the Supreme Court also has identified the right of prisoners to access the courts for the purpose of presenting their complaints as a corollary of the First Amendment right to petition for redress of grievances. See Cruz v. Beto, 405 U.S 319, 321 (1972). In other instances, preventing prisoners from filing appeals may constitute a denial of equal protection. See, e.g., Cochran v. Kansas, 316 U.S. 255, 257-58 (1942). The Second Circuit has construed the right of access to the courts as originating both from the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment. See Bourdon v. Loughren, 386 F.3d 88, 89 (2d Cir. 2004).

transcript of his or her record as of right, because the ability to seek appellate review may not be conditioned upon ability to pay.[11]  See Griffin v. Illinois, 351 U.S. 12, 18-19 (1956); see also Mayer v. City of Chicago, 404 U.S. 189, 193-94 (1971) (affirming Griffin, and calling it "fundamental" that indigents receive as "adequate and effective an appellate review as that given appellants with funds") (internal quotations omitted).  Similarly, in civil cases where fundamental rights are at stake, no person may be denied access to the courts based on inability to pay necessary fees.  See, e.g., M.L.B. v. S.L.J., 519 U.S. 102 (1996) (ruling that an indigent mother appealing the state's termination of her parental rights implicated a fundamental interest and that she must receive the required transcript at state expense); Little v. Streater, 452 U.S. 1 (1981) (holding that state must pay for a blood test required for an indigent defendant to contest a paternity suit); Boddie v. Connecticut, 401 U.S. 371 (1971) (holding that state could not deny a divorce to a couple based on their inability to pay $60 in court costs).

        Della Camera, a civil litigant, does not allege that he has been denied access to the courts to vindicate some underlying fundamental constitutional right.  He merely alleges that the defendants' failure to gather certain evidence pursuant to a police investigation deprived him of successfully bringing a state tort action.  "There is, however, no fundamental constitutional right to an investigation by government officials."  Stone v. Dep't. of Investigation, 1992 U.S. Dist. LEXIS 1120, *5 (S.D.N.Y. Feb. 5, 1992).  Furthermore, there is "no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there

---

        [11] The right of indigent criminal defendants to have appointed counsel at trial does not stem from a right of access to the courts, but rather from the Sixth Amendment.  See Gideon v. Wainwright, 372 U.S. 335 (1963).  The ability of an indigent defendant to receive court-appointed counsel in a criminal appeal as of right, however, is based on due process guarantees. See Douglas v. California, 373 U.S. 353 (1963).

was another recognized constitutional right involved." <u>Gomez v. Whitney</u>, 757 F.2d 1005 (9th

Cir. 1985).

The only failure-to-investigate claims which have been considered abridgments of the

right of access to the courts are those where the investigating official concealed or destroyed

evidence, or otherwise affirmatively "obstruct[ed] legitimate efforts to seek judicial redress."

<u>Whalen v. County of Fulton</u>, 126 F.3d 400, 406 (2d Cir. 1997); <u>see</u> also <u>Barrett v. United States</u>,

798 F.2d 565 (2d Cir. 1986) (affirming that allegations that various government defendants

conspired to cover up a death stemming from a medical experiment were sufficient to allow

administrator of decedent's estate to pursue a denial-of-access claim); <u>Small v. City of New</u>

<u>York</u>, 274 F. Supp. 2d 271 (E.D.N.Y. 2003) (holding that allegations that police intimidated

witnesses, destroyed material evidence, and delayed administering a sobriety test to a fellow

officer who struck and killed pedestrians in an auto accident stated a valid denial-of-access claim

under § 1983).  Della Camera does not allege—nor has he presented any evidence— that the

defendants failed to conduct blood alcohol tests on the two drivers or investigate further

specifically to frustrate his claim, nor is there any evidence to suggest that the defendants

intended to cover up the causes of the auto accident or otherwise to obstruct justice.

Under Connecticut law, any operator of a motor vehicle is deemed impliedly to have

consented to blood, breath, or urine testing.  <u>See</u> Conn. Gen. Stat. § 14-227b(a).  Nonetheless,

when a motor vehicle accident results in serious injury or death to any person, a police officer

only may gather a blood or breath sample from the drivers involved if the officer "has probable

cause to believe that such operator[s] . . . [were] under the influence of intoxicating liquor or any

drug, or both."  Conn. Gen. Stat. § 14-227c(b).  The Connecticut Supreme Court has determined

that probable cause exists when "the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that [an offense] had been committed." State v. Torres, 182 Conn. 176, 189, 438 A.2d 46 (Conn. 1980).

In the instant case, the defendants have stated that they lacked probable cause to conduct such tests. Each officer has submitted an affidavit in which he stated that upon investigating the drivers' physical condition and vehicles, there was no evidence of drug or alcohol use by either Conrad or Laurello. Furthermore, had the defendants conducted such tests without probable cause, they would have violated state law and likely the Fourth Amendment's requirement of reasonable search and seizure. See, e.g., Anthony v. City of New York, 339 F.3d 129, 142 (2d Cir. 1999) (holding that blood and urine tests are searches under the Fourth Amendment and therefore must meet standards of reasonableness).

Della Camera also argues that the officers should have investigated Conrad's and Laurello's activities immediately before the accident, as well as interviewed the passenger in Laurello's vehicle. It is unclear what useful information Laurello's passenger, his blind and elderly mother, might have provided in an interview.[12] Although Laurello stated at his deposition that Conrad "shot right by him" and went "flying right in front of [him]," there was no other evidence presented of Conrad's conduct during or before the accident. Ultimately, there were no facts suggesting that either driver engaged in alcohol consumption just before the accident or other circumstances indicating that the drivers' immediately prior activities were relevant to the

---

[12] The defendants did take statements from other disinterested witnesses to the accident.

accident's cause.[13]

Finally, the Supreme Court has ruled that when a plaintiff's denial-of-access claim "turns on a litigating opportunity yet to be gained or an opportunity already lost," the complaint "must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Christopher v. Harbury, 536 U.S. 403, 414, 415 (2002). Della Camera has not met this standard. Nothing prevented Della Camera from filing a negligent or reckless misconduct lawsuit against Conrad and Laurello; indeed, he already filed a similar complaint against both drivers in Connecticut state court. Neither has he alleged any conduct by the defendants that impeded his ability to file such a suit. Della Camera's alleged injury is speculative: Had blood alcohol tests been performed on Conrad and Laurello, the results of those tests may have provided evidence helpful to his reckless misconduct action.[14] This is insufficient to consitute a valid denial-of-access claim. Generally, a denial-of-access plaintiff must provide evidence of actual injury affecting his ability to bring suit, not injury to his ability to win a lawsuit.[15] See Monsky v. Moraghan, 1997 U.S. App. LEXIS 36158, *12 (2d Cir. Dec. 24, 1997); see also Pizzuto v. County of Nassau, 240 F. Supp. 2d 203, 213 (E.D.N.Y. 2002) (holding that an

---

[13] The Court notes that the accident occurred at approximately 9:00 a.m. on a Tuesday morning.

[14] The speculation, of course, runs both ways. There is no evidence that either Conrad or Laurello was under the influence of alcohol or drugs at the time of the accident. Presumably, had the drivers tested negative for any intoxicant, Della Camera's allegations of reckless misconduct by both drivers would remain unsubstantiated.

[15] The Court acknowledges that under certain circumstances, the showing of egregious police misconduct, such as destroying material evidence, might be sufficient to establish a claim of denial of access to the courts. The Court reiterates that there is no evidence before it suggesting that the defendants here had reason to believe Conrad or Laurello was intoxicated, or that defendants engaged in any sort of affirmative misconduct or obstruction while conducting their investigation.

10

alleged cover-up which "injured plaintiffs' ability to gather evidence" did not impede plaintiffs' ability to pursue their action, and therefore dismissing denial-of-access claim).  For the above reasons, the Court concludes that Della Camera has failed to show any violation of his constitutional right of access to the courts.

Moreover, even had Della Camera succeeded in demonstrating a violation, the defendants would be protected by qualified immunity.  Generally, that doctrine is "intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'"  Anderson, 483 U.S. at 646 (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984).  The Second Circuit has held that "if a reasonable officer could have believed that the challenged conduct was lawful at the time of the violation," the right violated does not qualify as "clearly established," and qualified immunity bars the claim.  Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004).

Here, the defendants have sworn that their actions were guided by Connecticut state law, which requires that a police officer possess probable cause before performing a blood test on an injured driver.  Based on the undisputed evidence, a reasonable officer easily could believe that declining to conduct a search for which he lacked probable cause was a lawful action under the circumstances.  Qualified immunity shelters all but the "plainly incompetent" or those who "knowingly violate the law."  Groh, 124 S. Ct at 1298.  There is no evidence to suggest that the defendants, based upon their actions here, fall under either of those exceptions to the doctrine.  Therefore, qualified immunity applies to bar the section 1983 claim.[16]

---

[16] Although the four defendants had different roles in the investigation and different degrees of responsibility for it, there is no need to address them individually, as this conclusion as the alleged constitutional deprivation and qualified immunity extends to all of them.

**IV.    Conclusion**

For the reasons stated above, defendants Bartley, Travisano, and Myjak's Motion for

Summary Judgment [Doc. # 30] and defendant Langello's Motion for Summary Judgment [Doc.

# 34] are GRANTED in their entirety.  The clerk is directed to order judgment in favor of the

defendants and close this case.

SO ORDERED this _____10th_____ day of December 2004 at Hartford, Connecticut.


_____    _____/s/ CFD_____

**CHRISTOPHER F. DRONEY**

**UNITED STATES DISTRICT JUDGE**

12